550 So.2d 694 (1989)
Michael J. WORLEY, Plaintiff-Appellee,
v.
Revelle WINSTON, Defendant-Appellant.
No. 20635-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 1989.
Writ Denied November 17, 1989.
*695 Jones & Johnson, Jerry L. Jones, Monroe, for plaintiff/appellee.
Clyde Lain, II, Monroe, for defendant/appellant.
Before HALL, C.J., and FRED W. JONES, Jr. and SEXTON, JJ.
HALL, Chief Judge.
Plaintiff, Michael J. Worley, a Ouachita Parish Sheriff's Department police officer, filed this action against defendant, Revelle Winston, for damages arising out of injuries he sustained while subduing and arresting defendant for being a "peeping tom" at a motel. After trial, the district court rendered judgment in favor of plaintiff awarding him $3,500 for personal injuries, $500 for damages to his watch, and $184 for medical expenses. Defendant appealed. The primary issue to be decided on appeal is whether a police officer may recover tort damages from an arrestee for injuries the officer sustained during the arrest when the arrestee unlawfully resisted. Finding that the officer may recover, we affirm the judgment below but amend it to reduce the damages awarded.

I.
On April 4, 1987, plaintiff and Officer Billy Myers were employed as plain-clothes investigators with the Ouachita Parish Sheriff's Department. Around midnight they responded to a call to investigate a suspicious vehicle at the Magnolia Motel. The police officers testified that when they arrived at the motel they noticed a blue Toyota pick-up truck parked near some storage buildings, not in the motel parking lot. They checked the vehicle registration and found that it belonged to defendant. They were aware that defendant had previously been convicted of being a "peeping tom." At that point, Myers went one way to see if he could find defendant and plaintiff went in another direction. Myers saw a head go up and down near a window directly in front of him. Myers shined the light toward the area where he saw the head and defendant was crouched down with his pants open. Myers said, "Police. Freeze." Defendant jumped up, ran toward the back of the building, and went over a fence. Myers ran after defendant. Myers passed by plaintiff and told him that he was in pursuit of defendant. Plaintiff went toward defendant's truck to cut him off. Plaintiff, approached defendant, identified himself as a police officer and told defendant to stop twice. Defendant did not stop. Plaintiff began to struggle with defendant approximately 25 feet from defendant's truck. Plaintiff's left little finger was broken between the first and second joint during the struggle. His watch was also broken.
Defendant testified that he went to the hotel to meet a woman. She left first and as he was leaving and walking to his truck, he was accosted by a bunch of "street guys" who proceeded to start beating on him. He dropped to the ground, was handcuffed, and then was thrown into the sheriff's car. He did not know the men were officers and he never touched any of them. Defendant admitted he later pled guilty to *696 a peeping tom charge and resisting arrest, but said he did so to avoid embarrassment.

II.
Defendant argues that the trial court erred in finding that his actions caused plaintiff's injuries. He argues that plaintiff was the aggressor and that he, defendant, did not intentionally inflict any harm on the plaintiff and is not, therefore, liable.
The trial court did not err when it evaluated the credibility of the witnesses and accepted plaintiff's evidence over defendant's. The preponderance of the evidence establishes that the officers had probable cause to arrest defendant, the arrest was lawful, and defendant unlawfully resisted the arrest, resulting in plaintiff's injuries.
Defendant's liability is readily apparent under a duty/risk analysis. In order for plaintiff to recover damages he must show that defendant owed a duty to plaintiff, this duty was breached, the risk or harm caused was within the scope of protection of the duty breached, and defendant's conduct was a cause-in-fact of the harm. Forest v. State, Louisiana Department of Transportation and Development, 493 So.2d 563 (La.1986); Shelton v. Aetna Casualty & Surety Co., 334 So.2d 406 (La. 1976); Broyles v. Yarbrough, 374 So.2d 705 (La.App. 1st Cir.1979), writ denied, 380 So.2d 71 (La.1980).
A person has a duty to submit peaceably to a lawful arrest. See LSA-C. Cr.P. Art. 220; LSA-R.S. 14:108. This duty is intended to protect the arresting police officer, the person being arrested, and innocent bystanders. Defendant breached this duty by fleeing from the police officers and struggling with plaintiff. The risk of a police officer being injured or personal property being destroyed during an arrest when the arrestee unlawfully resists is within the ambit of protection of the duty. Defendant's conduct was a cause-in-fact of and directly resulted in plaintiff's injuries.

III.
Defendant next argues that plaintiff is not entitled to damages since he was injured in the performance of his duties as a police officer and, as such, plaintiff "assumed the risk" of injuries during an arrest attempt. Defendant urges that the "professional rescuers rule" bars plaintiff's recovery.
Plaintiff argues that defendant cannot raise this defense since it was not specifically pleaded in accordance with LSA-C. C.P. Art. 1005.
In the pre-trial order defendant asserted as one of his contentions that plaintiff assumed the risk of his own injuries. A defense raised during the pre-trial procedure gives fair notice of the nature of the defense, prevents surprise, and satisfies the requirements of Article 1005. Austrum v. City of Baton Rouge, 282 So.2d 434 (La.1973); Beauchamp v. Eckerd's Drugs of Louisiana, Inc., 533 So.2d 390 (La.App. 4th Cir.1988), writ denied, 535 So.2d 743 (La.1989); Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir.1979). Therefore, assumption of the risk as an affirmative defense was properly at issue in this case.
The professional rescuers rule, recognized in some recent Louisiana cases, essentially states that a professional rescuer, such as a fireman or a policeman, who is injured in the performance of his duties, "assumes the risk" of such an injury and is not entitled to damages. Sayes v. Pilgrim Manor Nursing Home, Inc., 536 So.2d 705 (La.App. 3d Cir.1988); Thompson v. Warehouse Corporation of America, Inc., 337 So.2d 572 (La.App. 4th Cir. 1976). Police officers and others who in their profession of protecting life and property necessarily endanger their safety do not assume the risk of all injury without recourse against others. A professional rescuer may recover for an injury caused by a risk which is independent of the emergency or problem he has assumed the duty to remedy. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971); Sayes v. Pilgrim Manor Nursing Home, Inc., supra.
*697 A risk is independent of the task, and the assumption of the risk rationale does not bar recovery, if the risk-generating object could pose the risk to the rescuer in the absence of the emergency or specific problem undertaken. "Dependent" risks arise from the very emergency that the professional rescuer was hired to remedy. The assumption rationale bars recovery from most dependent risks except when (1) the dependent risks encountered by the professional rescuers are so extraordinary that it cannot be said that the parties intended the rescuers to assume them, and (2) the conduct of the defendant may be so blameworthy that tort recovery should be imposed for the purposes of punishment or deterrence. Sayes v. Pilgrim Manor Nursing Home, Inc., supra; Chinigo v. Geismar Marine, Inc., 512 So.2d 487 (La. App. 1st Cir.1987), writ denied, 514 So.2d 457 (La.1987); Comment, Negligence, Actions by Police Officers and Firefighters: A Need for a Professional Rescuers Rule, 66 Cal.L.Rev. 585 (1978). See also Thompson v. Warehouse Corporation of America, Inc., supra.
Plaintiff, as a police officer, was hired to protect others from criminal activities, was expected to effect arrests as part of his duties, and could expect a criminal to resist arrest. Accordingly, the risk of being injured while effecting an arrest is a dependent risk, arising out of the specific problem which plaintiff was hired to remedy. Under the circumstances, however, plaintiff should recover damages since defendant's conduct in resisting arrest was not only highly blameworthy but was also criminal.
While the professional rescuers rule, similar to the "fireman's rule," has traditionally been discussed in terms of assumption of risk, under current Louisiana tort theory the rule should, perhaps, be couched in terms of comparative fault or duty/risk. See Murray v. Ramada Inns, Inc., 521 So.2d 1123 (La.1988). More precisely, the rule comes into play in determining the risks included within the scope of the defendant's duty and to whom the duty is owed. It might be said that a defendant's ordinary negligence or breach of duty does not encompass the risk of injury to a police officer or fireman responding in the line of duty to a situation created by such negligence or breach of duty. A defendant's particularly blameworthy conduct, especially intentional criminal conduct, does encompass the risk of injury to a policeman or fireman responding in the line of duty. Further, in the case of injury to an officer by someone resisting arrest, we have stated above that the duty is intended, at least in part, to protect the officer from injury while effecting the arrest in the line of duty. Where a duty is owed, as in this case, to a certain class of persons, recovery cannot be denied to a person of this class because of the very factor that makes the person a member of the class.

IV.
Defendant finally contends that plaintiff's damage award is excessive while plaintiff, in brief, argues that the award is too low and should be increased.
Plaintiff did not answer or appeal the judgment below and his request cannot be considered. Welborn v. Ashy Enterprises, Inc., 504 So.2d 120 (La.App. 2d Cir.1987).
The trial court did not abuse its discretion when it awarded $3,500 for plaintiff's personal injuries. Plaintiff testified that he had pain in his finger for several months after the incident until the time of trial. He has problems grabbing things and cannot fully bend his finger. On one occasion plaintiff had difficulty making an arrest because of his finger.
Dr. Frank Cline, an orthopedic surgeon, treated plaintiff. Plaintiff fractured the distal end joint of the left little finger. Dr. Cline placed the finger in a splint. He offered to do an operation on the finger to improve the finger's ugly appearance and to allow it to function better. Plaintiff decided not to have the operation. Plaintiff's pain was due to traumatic arthritis in the joint which should subside after a year and a half when the joint stabilizes.
Considering the finger's unsightly appearance, the pain associated with the broken *698 joint, and the difficulty which plaintiff has experienced in performing his police duties, the award is not excessive.
The trial court erred when it awarded $500 for plaintiff's watch which was broken during the struggle. Although the record contains evidence to support plaintiff's allegation that his watch was broken during the struggle, the record does not contain any evidence from which the court could determine the value of the watch. Accordingly, the judgment of the trial court must be amended to delete that portion of the judgment.

V.
For the reasons assigned above the judgment of the trial court is amended to reduce the amount awarded by $500 from $4,184 to $3,684. In all other respects the judgment is affirmed. Costs of the appeal are assessed to defendant.
AMENDED AND AFFIRMED.