WILLIE BROOKS, III
v.
SHAW CONSTRUCTORS, INC. AND MELVIN LEIF RAYBORN
No. 2008 CA 0804.
Court of Appeals of Louisiana, First Circuit.
October 31, 2008.
NOT DESIGNATED FOR PUBLICATION
RANDOLPH A. PIEDRAHITA, SHERMAN Q. MACK, Counsel for Plaintiff/Appellee Willie Brooks, III.
PAMELA F. NOYA, RICHARD S. VALE, COREY M. FITZPATRICK, ERIC E. POPE, Counsel for Defendants/Appellants Shaw Constructors, Inc. and Melvin Leif Rayburn.
Before: CARTER, C.J., WHIPPLE and DOWNING, JJ.
DOWNING, J.
A Livingston Parish Sheriffs Deputy, Willie Brooks, III, claimed he was injured by a reckless driver. Deputy Brooks filed suit against the driver, Melvin Leif Rayburn, and Mr. Rayburn's employer, Shaw Constructors, Inc., (collectively, Rayburn), alleging that instead of stopping as ordered, Mr. Rayburn continued moving the vehicle forward until it struck Deputy Brooks. The jury found in favor of Deputy Brooks, and it also found that the risk Deputy Brooks encountered was so extraordinary or that Mr. Rayburn's conduct was so blameworthy that tort recovery should be imposed. Judgment was rendered accordingly, and Rayburn appealed. For the following reasons, we affirm the trial court judgment.

FACTS AND PROCEDURAL HISTORY
On June 2, 2006, the Livingston Parish Sheriffs Office received a 911 call that a vehicle was being driven erratically down Highway 447, in Walker. The driver was Mr. Rayburn, who was driving his employer, Shaw Constructors, Inc.'s, pick-up truck. Deputy Brooks, although off duty at the time, but still in uniform, attempted to intercept Mr. Rayburn by blocking the roadway with his police car. Mr. Rayburn stopped at a red light, and Deputy Brooks ordered him to exit the vehicle. Instead of getting out, Mr. Rayburn continued to move his vehicle forward at 1  2 m.p.h. toward the officer. Deputy Brooks claimed that Mr. Rayburn's truck struck his knee even though he was standing well off the road's travel lanes.
When Mr. Rayburn finally stopped and exited the vehicle, Deputy Brooks ordered him to lie face down on the ground. Mr. Rayburn did not comply, so Deputy Brooks performed a "take-down" maneuver. Deputy Brooks then he noticed Mr. Rayburn smelled of alcohol and asked that he take a field sobriety test. Mr. Rayburn refused. Mr. Rayburn was taken to the Livingston Parish Prison and charged, however his charges did not include driving while intoxicated (DWI).[1] He was taken to Livingston Parish Prison.[2] Mr. Rayburn later said that he was suffering from a migraine headache at the time that caused his bizarre conduct.
On July 19, 2006, Deputy Brooks filed suit against Mr. Rayburn and his employer; Mr. Rayburn did not reconvene at the time. Nearly a year later, Mr. Rayburn filed a civil rights suit against Deputy Brooks in federal court, claiming that the deputy beat him after his arrival at the prison. The state trial court allowed discovery of the events surrounding the alleged incident. Prior to trial, however, it excluded any reference to the alleged beating or pending lawsuit on the grounds that it was irrelevant to the instant case. The trial court allowed the pleadings to be expanded to include an allegation that Deputy Brooks was injured by Mr. Rayburn's intentional act.[3]
A jury trial began on October 10, 2007. On October 12, 2007 the jury rendered a verdict in favor of Deputy Brooks, awarding him damages totaling $625,123.00, which included $383,123.00 for loss of future earning capacity. Rayburn appealed. The assignments or error are summarized as follows:
1. The trial court erred in failing to find that the claims were barred by the Professional Rescuer's Doctrine;
2. The trial court erred in excluding all evidence relating to Mr. Rayburn's alleged beating while incarcerated and the related lawsuit;
3. The trial court erred in allowing the trial to proceed when Deputy Brooks was demoted during the trial, which then did not allow Rayburn the opportunity to respond to this new evidence and;
4. The trial court erred in awarding future lost wages where Deputy Brooks failed to prove them.

Professional Rescuer's Doctrine
The main issue of this appeal is whether the jury erred in failing to find that Deputy Brooks's recovery was precluded by the Professional Rescuer's Doctrine.
The Professional Rescuer's Doctrine is a jurisprudential rule that essentially states, a professional rescuer, such as a policeman, who is injured in the performance of his duties, "assumes the risk" of such an injury and is not entitled to damages. See Mullins v. State Farm Fire and Casualty Co., 96-0629, p. 3 (La.App. 1 Cir. 6/27/97), 697 So.2d 750, 752. These individuals who, in their professions of protecting life and property, necessarily endanger their safety, however, do not assume the risk of all injury without recourse against others. Id.
A professional rescuer may recover for an injury caused by a risk that is independent of the emergency or problem he has assumed to remedy. A risk is independent of the task, if the risk-generating object could pose the risk to the rescuer in the absence of the emergency or specific problem undertaken. Id.
On the other hand, a "dependent" risk arises from the very emergency that the rescuer was hired to remedy. Most dependent risks are barred except when: (1) the dependent risks encountered by the rescuer are so extraordinary that it cannot be said that the parties intended the rescuers to assume them; or (2) the conduct of the defendant may be so blameworthy that tort recovery should be imposed for the purposes of punishment or deterrence. Id., 96-0629, pp. 3-4, 697 So.2d at 752-53.
Police officers are hired to protect others from criminal activities, are expected to effect arrests as part of their duties, and could expect a criminal to resist arrest. Gann v. Matthews, 03-0640, p. 6 (La.App. 1 Cir. 2/23/04), 873 So.2d 701, 705. The risk of being injured while carrying out an arrest arises out of the specific problem which the police officer was hired to remedy. Id. Thus, in order for a police officer to recover for injuries received while attempting to arrest a person who is resisting, the conduct of the arrestee in resisting must be so blameworthy that tort recovery should be imposed for purposes of punishment or deterrence. Gann, 03-0640, pp. 6-7, 873 So.2d at 705-06, citing Worley v. Winston, 550 So.2d 694 (La.App. 2 Cir. 1989).
In Worley v. Winston, Officer Worley, a police officer, was injured when he attempted to arrest a "Peeping Tom." Officer Worley's partner approached the defendant and shouted, "Police, Freeze." The defendant ran and climbed over a fence. Officer Worley joined the pursuit and eventually approached the defendant, identified himself as a police officer, and told the defendant to stop, but the defendant did not stop. They began to struggle and the officer's finger was broken during the encounter. Worley, 550 So.2d at 695. The Worley court found that while the risk of being injured while effecting an arrest was a dependent risk, Officer Worley could still recover damages because the defendant's conduct in resisting arrest was so blameworthy. Id. at 697.
Here, Rayburn argues, citing Gann v. Matthews, that Deputy Brooks' claims are barred by the professional rescuer's doctrine since it is undisputed that Deputy Brooks' injuries arose from the very emergency that he was hired to remedy. We disagree.
Deputy Brooks testified that Mr. Rayburn refused to comply with his requests to stop and exit his vehicle and never attempted to put his vehicle in "park." Independent witnesses corroborate this testimony. There was testimony that the deputy repeatedly yelled "stop," hit the moving vehicle with his baton, and even pulled his gun while continuing to order the driver to halt. Yet, after momentarily stopping and exiting the vehicle as ordered, Mr. Rayburn's vehicle slowly moved toward Deputy Brooks until it struck his person. This testimony was also supported by an independent witness who observed the scene from a nearby store where the witness is employed. He testified that Mr. Rayburn's truck was "tracking" the police officer even though the officer had moved well off the roadway.
Here, unlike the Gann court, the jury made a factual finding that Mr. Rayburn's conduct was either so blameworthy or the risk was so extraordinary as to impose liability. We conclude under the totality of the circumstances, and under these specific facts, the jury was not manifestly erroneous in this determination. A factfinder's factual finding will not be disturbed on appeal absent manifest error. See Williams v. State, Department of Wildlife and Fisheries, 95-2456, p. 5 (La.App. 1 Cir. 11/20/96), 684 So.2d 1018, 1023, citing Rosell v. ESCO, 549 So.2d 840, 844 (La. 1989). To reverse factual findings, an appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. Stobart v. State, Department of Transportation and Development, 617 So.2d 880, 882 (La. 1993). We conclude that that is not the case in this situation. Therefore, this assignment of error is without merit.

Future Loss of Earning Capacity
Mr. Rayburn assigns error to the loss of earning capacity and future wage award. Mr. Rayburn is arguing that Deputy Brooks would have no loss of future earning if he can earn $28,000 which even his own expert, Nancy Favaloro, testified that he was able to do in almost any occupation he should choose.
Here, Deputy Brooks will maintain his base salary, but will no longer work in the position he was working at the time of the accident because he is unable to fire a shotgun or perform takedown maneuvers. Livingston Parish Sheriff Willie Graves told the jury that since Deputy Brooks cannot maintain his position as a patrolman, he cannot work extra details. Sheriff Graves testified that this could result in a $1,200.00-$1,500.00 reduction in his monthly pay. Sheriff Graves also testified that Deputy Brooks would probably be working in a clerical position, and although his base pay will remain the same, this position does not entitle him to the benefit of taking a police unit to and from work.
Mr. Rayburn's vocational rehabilitation expert suggested several jobs with comparable earning as Deputy Brooks's base pay, but these positions did not pay anywhere near his prior salary considering the "detail" or extra-duty pay which amounted to $15,000.00-$18,000.00 per year.
A reviewing court should not set aside an award of special damages unless an analysis of the facts and circumstances reveals an abuse of discretion in setting the award. Williams v. State, Department of Wildlife and Fisheries, 95-2456, p. 7, 684 So.2d at 1023-1024 citing Stevens v. Winn-Dixie of Louisiana, 95-0435, p. 10 (La.App. 1 Cir. 11/9/95), 664 So.2d 1207, 1214. Awards of loss of earning capacity are inherently speculative and are intrinsically incapable of being calculated with mathematical certainty. Id. An appellate court must exercise sound discretion in reviewing such awards. Id. 95-2456 p. 7, 684 So.2d at 1023-1024. In a case where the damages are subject to uncertainty and speculation, all the more deference should be paid to the trial court's decision. Id.
The jury apparently chose to accept the range of figures Deputy Brooks's expert provided, since it awarded the exact amount the expert calculated. The jury apparently did not accept Rayburn's expert's calculations. We conclude that since this amount is supported in the record, there is no abuse of discretion. This assignment of error is without merit.

Trial Court's Exclusion and Admission of Evidence
Mr. Rayburn argues that the trial court erred in excluding all evidence relating to the beating he allegedly incurred while incarcerated in the Livingston Parish jail and the resulting federal lawsuit. He claims that the jury was never made aware of the full antagonistic relationship between the parties. Thus, he argues, by excluding this evidence, the jury did not hear Deputy Brooks's motives for bringing this lawsuit, which relates directly to his credibility.
A trial court has a broad range of discretion when ruling on the admissibility of evidence, and such rulings will not be disturbed on appeal unless there is a clear abuse of discretion. Grayson v. R.B. Ammon and Associates, Inc., 99-2597, p. 8 (La.App. 1 Cir. 11/3/00), 778 So.2d 1, 10.
The trial court opined that Mr. Rayburn's attempt to elicit testimony and evidence regarding the alleged incident after his arrest had little to do with the issues of this litigation. Even if the evidence was relevant, however, the probative value of the evidence must be balanced against the danger of unfair prejudice and confusion of issues. LSA-C.E. art 403. After a careful review of the record, we conclude that the trial court was well within its discretion in excluding this evidence and in determining that it was irrelevant and highly prejudicial.
Mr. Rayburn next argues that the trial court erred in allowing the jury to hear new evidence regarding Deputy Brooks's demotion from patrolman to dispatcher. He claims that this evidence unfairly prejudiced his case because he did not have time to prepare a rebuttal to this testimony.
We disagree. Mr. Rayburn was on notice that Deputy Brooks was likely to lose his position as a patrolman with the Sheriff's Department. The pre-trial order states that Deputy Brooks's treating physician told him that police work within five years would be untenable, and he was already being limited in his duties and abilities. Sheriff Graves was listed as a witness and had already testified that Deputy Brooks would not be able to continue as a patrolman.
We conclude that since Sheriff Graves was listed as a potential witness, and Deputy Brooks testified in his deposition, which was proffered, regarding his tenuous situation at the Sheriff's Department, Mr. Rayburn cannot claim surprise when Deputy Brooks was officially demoted. Mr. Rayburn was not prejudiced by this testimony.
Accordingly, we conclude that the trial court did not abuse its vast discretion in excluding testimony and evidence about the altercation at the jail because it was reasonable for the trial court to determine that it was irrelevant to the issues of this litigation. We further find no error in the trial court allowing Deputy Brooks to tell the jury that he had officially been demoted, since the jury had already heard of this likelihood. This assignment of error is without merit.

DECREE
For the above reasons the trial court's judgment is affirmed. We assess all appeal costs against appellants, Melvin Leif Rayburn and Shaw Constructors, Inc.
AFFIRMED.
NOTES
[1] The test was not administered because no one was available with the proper credentials to administer the test.
[2] He was originally charged with attempted murder of a police officer, but this charge was later dismissed, and he was charged with a misdemeanor.
[3] At this hearing, the trial court also prohibited any mention of Deputy Brooks's subsequent vehicular accident. But this exclusion was not appealed.