# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

June 25, 2021

Lyle W. Cayce
Clerk

No. 17-30864

Officer John Doe, *Police Officer*,

*Plaintiff—Appellant*,

*versus*

DeRay Mckesson; Black Lives Matter; Black Lives Matter Network, Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:16-CV-742

ON REMAND FROM THE
SUPREME COURT OF THE UNITED STATES

Before Jolly, Elrod, and Willett, *Circuit Judges*.

Per Curiam:

This case arose out of a protest alleged to have been organized and led by defendant DeRay Mckesson in Baton Rouge, Louisiana, in response to the police shooting of Alton Sterling. According to the complaint, the defendant

No. 17-30864

directed the protest to a public highway in front of a police station.[1]  The police began making arrests and attempting to clear the highway.  Some protesters began throwing various objects at the police.  Officer John Doe was struck in the face by a piece of concrete or similar rock-like object.  As a result, he lost teeth and suffered injury to his jaw and brain.  The individual who threw the object has not been identified.

Officer Doe brought suit against Mckesson in the Baton Rouge, Louisiana, federal district court, alleging that his injuries resulted from Mckesson's negligence in organizing and leading the protest.  The district court dismissed Officer Doe's claim under Federal Rule of Civil Procedure 12(b)(6).  It found that the facts alleged did not fall into one of the specific categories of conduct for which an individual can be held liable for the tortious activity of an associate.  *Doe v. Mckesson*, 272 F. Supp. 3d 841, 847–48 (M.D. La. 2017).  Officer Doe appealed to this court.

I.

In *Doe v. Mckesson*, 945 F.3d 818 (5th Cir. 2019), *vacated*, 141 S. Ct. 48 (2020), a divided panel of this court found that Officer Doe's complaint had stated a cause of action under Louisiana law against Mckesson.  The theory of liability accepted by this court was that Officer Doe had plausibly alleged that Mckesson knew or should have known that the protest he led onto a public highway would turn confrontational and violent, and thus that, in the course of organizing and leading that protest, he breached a duty of reasonable care owed to Officer Doe and persons similarly situated.  Stated more generally, we found that Louisiana law recognized "a duty not to

---

[1] The case was dismissed by the district court under Federal Rule of Civil Procedure 12(b)(6).  Consequently, the alleged facts are taken directly from the plaintiff's complaint.

2

No. 17-30864

negligently cause a third party to commit a crime that is a foreseeable consequence of negligence," and that Officer Doe had plausibly alleged a violation of that duty in illegally blocking a public highway. *Doe*, 945 F.3d at 826–27. We denied Mckesson's petition for rehearing en banc. *Doe v. Mckesson*, 947 F.3d 874 (2020). He petitioned the Supreme Court of the United States for a writ of certiorari.

Although Mckesson's petition to the Supreme Court focused on whether holding him liable for Officer Doe's injuries was consistent with the First Amendment, the Supreme Court declined to address that issue. *See Mckesson v. Doe*, 141 S. Ct. 48, 49–51 (2020) (per curiam). It found our interpretation of Louisiana law "too uncertain a premise on which to address . . . [t]he constitutional issue . . . ." *Id.* at 50. It found that this "dispute presents novel issues of state law peculiarly calling for the exercise of judgment by the state courts." *Id.* at 51. Although federal courts are generally presumed competent to apply state law, the Supreme Court suggested that we should have pursued the certification procedure made available by the Supreme Court of Louisiana[2] before engaging in the politically fraught balancing of "various moral, social, and economic factors" that is required before imposing a duty under Louisiana law. *Id.* at 50–51 (citations omitted). Today, in following the direction of the Supreme Court, we respectfully certify the relevant questions of law, set out below, to the Supreme Court of Louisiana.[3]

---

[2] Supreme Court of Louisiana Rule XII, §§ 1–2 provides that a federal court of appeals may, upon its own motion, certify determinative questions of Louisiana law when it appears as though there is no clear controlling precedent from the Supreme Court of Louisiana.

[3] A resolution by the Supreme Court of Louisiana of the certified questions will bind this court to apply that determination in deciding this case.

No. 17-30864

## II.

In the meantime our attention has been drawn to a separate aspect of Louisiana law, the Professional Rescuer's Doctrine,[4] that could be dispositive.[5]  That doctrine, put succinctly, is a judge-made rule that "essentially states that a professional rescuer, such as a fireman or a policeman, who is injured in the performance of his duties, assumes the risk of such an injury and is not entitled to damages."  *Gann v. Matthews*, 873 So. 2d 701, 705 (La. App. 1st Cir. 2004) (citation and internal quotation marks omitted).  The parties disagree as to whether this doctrine bars Officer Doe from recovering.  *See* Mckesson Suppl. Br., Dec. 18, 2020, Doc. No. 00515679716; Doe Suppl. Br., Dec. 18, 2020, Doc. No. 00515678655.  We have found limited guidance from the opinions of the Supreme Court of Louisiana on how this doctrine might apply to the particular facts of this case. Because we find this to be a close question of law, which also raises a significant issue of state policy, we further take this opportunity to respectfully elicit guidance on this issue from the Supreme Court of Louisiana.

## III.

Accordingly, we hereby certify the following determinative questions of law to the Supreme Court of Louisiana, by which responses we will be bound for the purposes of this case:

---

[4] Sometimes referred to as the "fireman's rule" or "firefighter's rule."

[5] We acknowledge credit to Professor Eugene Volokh for noting this issue. *The Weird Litigation Posture of the Doe v. Mckesson/Baton Rouge Black Lives Matter Protest Case*, VOLOKH CONSPIRACY (Dec. 19, 2019, 8:01 AM), https://reason.com/volokh/2019/12/19/the-weird-litigation-posture-of-the-doe-v-mckesson-baton-rouge-black-lives-matter-protest-case.

No. 17-30864

1) Whether Louisiana law recognizes a duty, under the facts alleged in the complaint, or otherwise, not to negligently precipitate the crime of a third party?

2) Assuming Mckesson could otherwise be held liable for a breach of duty owed to Officer Doe, whether Louisiana's Professional Rescuer's Doctrine bars recovery under the facts alleged in the complaint?

## IV.

Should the Supreme Court of Louisiana accept our request for answers to these questions, we disclaim any intention or desire that it confine its reply to the precise form or scope of the questions certified. Along with our certification, we transfer this case's record, our previous opinion, and the briefs submitted by the parties. We will resolve this case in accordance with any opinion provided on these questions by the Supreme Court of Louisiana. Accordingly, the Clerk of this Court is directed to transmit this certification and request to the Supreme Court of Louisiana in conformity with the usual practice of this court.

No. 17-30864

Jennifer Walker Elrod, *Circuit Judge*, concurring:

During a protest-turned-riot that was alleged to have been organized and led by defendant DeRay Mckesson in Baton Rouge, Louisiana, a police officer was seriously injured.[1] The injured officer's complaint specifically alleges that Mckesson directed the protest to illegally block the public highway in front of the Baton Rouge Police Department headquarters. Police officers began making arrests and attempting to clear the highway. Mckesson was "in charge of the protests" and was "seen and heard giving orders throughout the day and night of the protests."

The protest devolved into a violent riot. Mckesson observed as the rioters began throwing various objects at the police, including full water bottles that they had stolen from a nearby convenience store. Mckesson was present and part of the riot but did nothing to calm the crowd and allegedly "incited the violence" on behalf of the group. After the rioters ran out of water bottles to throw, an unidentified rioter in the group under Mckesson's control picked up a piece of concrete or a similar heavy, rock-like object and hurled it at Officer Doe. Officer Doe was struck in the face and immediately knocked unconscious. His injuries included loss of teeth, a jaw injury, a brain injury, a head injury, lost wages, "and other compensable losses."

Officer Doe filed suit against Mckesson alleging that his injuries were "occasioned by the intentional and/or negligent acts and/or omissions" of Mckesson. The complaint alleges not just unlawful actions by the

---

[1] The alleged facts are taken directly from the plaintiff's complaint and are accepted as true at this stage of the case, as we must do. *See Innova Hosp. San Antonio, Ltd. P'ship v. Blue Cross & Blue Shield of Georgia, Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) ("On a motion to dismiss, we must 'accept all well-pleaded facts as true and view those facts in the light most favorable to the plaintiff.'" (quoting *Richardson v. Axion Logistics, L.L.C.*, 780 F.3d 304, 406 (5th Cir. 2015))).

unidentified protestor-turned-rioter but also Mckesson's own actions in the ensuing riot.  Moreover, the complaint alleges that Mckesson not only committed negligent actions but that he also committed intentional actions. The complaint alleges that he is liable *in solido* for his "intentional actions and for conspiring to incite a riot/protest."

I agree that this case presents a close question of constitutional law and a significant issue of state law, and I also agree that we should take this opportunity to respectfully elicit guidance from the Louisiana Supreme Court.  *See Barnes v. Atl. & Pac. Life Ins. Co. of Am.*, 514 F.2d 704, 706 (5th Cir. 1975) ("When the state law is in doubt especially on the underlying public policy aims, it is in the best administration of justice to afford the litigants a consistent final judicial resolution by utilizing the certification procedure.").

While the text of the certified questions appears somewhat narrow to these eyes, the Louisiana Supreme Court is not limited to the text of the certified questions but may consider the complaint in its totality.  *See, e.g.*, *Boardman v. United Servs. Auto. Ass'n*, 742 F.2d 847, 851 n.10 (5th Cir. 1984) ("[T]he particular phrasing used in the certified question is not to restrict the Supreme Court's consideration of the problems involved and the issues as the Supreme Court perceives them to be in its analysis of the record certified in this case." (quoting *Martinez v. Rodriquez*, 394 F.2d 156, 159 n.6 (5th Cir. 1968))).

We stand to benefit from the Louisiana Supreme Court's guidance on the intersection of state tort law and constitutional law, as Americans should be free to exercise their constitutional rights to free speech and assembly. While these rights are "fundamental in our democratic society," the "constitutional guarantee of liberty implies the existence of an organized society maintaining public order, without which liberty itself would be lost in

No. 17-30864

the excesses of anarchy." *Cox v. Louisiana*, 379 U.S. 536, 554 (1965). Moreover, "[t]he control of travel on the streets is a clear example of governmental responsibility to [e]nsure this necessary order." *Id.*

**A True Copy**
**Certified order issued Jun 25, 2021**

*Jyle W. Cayce*
**Clerk, U.S. Court of Appeals, Fifth Circuit**